**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A1671. ESHLEMAN v. KEY et al.

PHIPPS, Chief Judge.

While playing in his neighbor's yard, 11-year-old Chandler Key was bitten by a police canine that had escaped a kennel placed in the back of a parked pickup truck. The canine was owned by the DeKalb County Police Department (the department) and assigned to Lynn Eshleman, a department police officer and canine handler who was another of Key's neighbors. Key's father (individually and on Key's behalf) initiated this negligence action against Eshleman, alleging that she was liable because she had failed to properly restrain the canine. In her answer, Eshleman asserted that she was entitled to official immunity because in caring for the canine, she had been performing her duties as a department police officer. Eshleman admitted that she had not securely closed the door of the kennel and that the canine got out of her truck; she

did not deny that the canine bit Key. Eshleman moved for summary judgment, asserting that Key could not recover because she was entitled to official immunity and Key had equal knowledge of the canine's propensities. Eshleman appeals from the trial court's denial of her summary judgment motion. We affirm.

1. "This [c]ourt has a duty to inquire into its jurisdiction to entertain each appeal."[1] "[T]he Georgia Code limits our jurisdiction to consider direct appeals to specific categories of judgments set forth in subsections (1) through (12) of OCGA § 5-6-34 (a). All other judgments of a trial court are considered interlocutory and are therefore subject to the interlocutory appeal procedure set forth in OCGA § 5-6-34 (b)."[2]

> Although the order appealed from is interlocutory, we have jurisdiction under the collateral order doctrine. . . .[O]fficial immunity is an entitlement not to stand trial rather than a mere defense to liability. And this Court has held that an order denying such an immunity claim is appealable under the collateral order doctrine because the order conclusively determines the disputed question, resolves an important

---

[1] *Hammonds v. Parks*, 319 Ga. App. 792, 793 (2) (735 SE2d 801) (2012) (citation omtted).

[2] *Settendown Pub. Util. v. Waterscape Util.*, 324 Ga. App. 652, 653 (751 SE2d 463) (2013).

issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment.[3]

2. Eshleman contends that the trial court erred by denying her motion for summary judgment because her actions at the time of the incident were discretionary and were within the scope of her official authority as a canine handler with the department. Because Eshleman has not shown that the relevant actions were discretionary, she is not entitled to summary judgment on the basis of official immunity.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[4]

> [O]n appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and

---

[3] *Taylor v. Campbell*, 320 Ga. App. 362, 363, n. 3 (739 SE2d 801) (2013) (citations and punctuation omitted); *Bd. of Regents of the University Sys. of Ga. v. Canas*, 295 Ga. App. 505, 507 (1) (672 SE2d 471) (2009); see *Cameron v. Lang*, 274 Ga. 122, 124 (549 SE2d 341) (2001) (issue of official immunity should be addressed as a threshold issue, as "official immunity is an entitlement not to stand trial rather than a mere defense to liability.").

[4] OCGA § 9-11-56 (c).

whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[5]

Viewed in the light most favorable to Key, the record shows the following. Eshleman was a police officer and canine handler with the department. The department owned "Andor," a suspect-apprehension canine, and assigned Andor to Eshleman after Eshleman completed canine handler school. Pursuant to department policy, canine handlers were responsible for the care and maintenance of canines assigned to them.

Eshleman began taking Andor home with her and keeping him there. After noticing that the children who lived next door to her were looking over the fence that separated their yards, Eshleman spoke with them and their parents, cautioning them not to look over the fence because the act antagonized Andor. Eshleman also warned them that if they "ever . . . see him out, he happens to escape the fence or something, to just stand still." When asked on deposition what it was about the children's actions that could put them in danger, Eshleman replied, "Well, when you run, you become a prey object to a dog."

---

[5] *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006) (citations omitted); *Taylor v. Campbell*, 320 Ga. App. 362 (739 SE2d 801) (2013).

On November 6, 2011, Eshleman was off-duty, preparing to take Andor with her to visit a friend. Eshleman was loading her personal vehicle, a pickup truck which was parked in her driveway; the truck was equipped with a camper cover that had a door that folded down over the tailgate. Eshleman brought Andor out of her house and commanded him to jump into the back of the truck. Andor complied, then entered the kennel in the back of the truck. Eshleman swung the kennel door shut, and "assumed" it was closed. While the truck's tailgate was down and the camper cover was open, Eshleman stepped away from the truck to retrieve a water bottle from another vehicle. Andor jumped out of the truck and ran toward Key, who was playing football in Eshleman's next-door neighbor's yard. As Key tried to run away, Andor chased him, latched onto his arm, and "took [him] to the ground." Key sustained a bite wound to his arm.

> [C]ounty law enforcement officers such as [Eshleman] are entitled to official or qualified immunity for the negligent performance of discretionary acts within the scope of their authority, but they may be personally liable if they negligently perform a ministerial act or act with actual malice or an intent to injure when performing a discretionary act.[6]

---

[6] *Roper v. Greenway*, 294 Ga. 112, 113 (751 SE2d 351) (2013) (citation and punctuation omitted); *Phillips v. Hanse*, 281 Ga. 133 (1) (637 SE2d 11) (2006).

The difference between ministerial and discretionary acts has been explained as follows: A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.[7]

To support her contention that the actions complained of were discretionary and taken within the scope of her official authority as a police officer and canine handler, Eshleman pointed to evidence that, as a department canine handler, she was responsible for Andor's care and maintenance even when she was off-duty;[8] that there were no department policies or procedures for securing and transporting police

---

[7] *Taylor*, supra at 363-364 (footnote omitted); *Daley v. Clark*, 282 Ga. App. 235, 237 (2) (638 SE2d 376) (2006); see *Reed v. DeKalb County*, 264 Ga. App. 83, 86-87 (589 SE2d 584) (2003).

[8] The department's employee handbook provided: "As with any other special purpose vehicles, equipment, etc.[,] the handlers who are authorized to control the canines will also be responsible for their care and maintenance of those canines assigned to them."

6

canines in private vehicles; and that she had not received such training regarding private vehicles.

We agree with Eshleman that her actions at the time of the incident, in caring for and maintaining the police canine assigned to her, were taken within the scope of her official authority.[9] Notwithstanding, she has not shown that the act from which the alleged liability arose[10]- proper restraint of the canine by securely closing the kennel door - was discretionary.

"The rationale for [official] immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight."[11] Eshleman did not show that the act at issue in this case, restraining the canine by securely closing the kennel door, "call[ed] for the exercise of personal deliberation and judgment, which in turn entail[ed] examining the facts,

---

[9] See generally *Taylor*, supra.

[10] See *Howell v. Willis*, 317 Ga. App. 199, 201 (729 SE2d 643) (2012).

[11] *Taylor*, supra at 363 (footnote omitted).

reaching reasoned conclusions, and acting on them in a way not specifically directed."[12]

Moreover, there was evidence that Eshleman's duty to properly restrain the canine was ministerial, to wit, "one that [was] simple, absolute, and definite, arising under conditions admitted or proved to exist, and requir[ed] merely the execution of a specific duty."[13] "A ministerial duty may be established by . . . a statute."[14]

In his complaint, Key alleged that Eshleman violated OCGA § 51-2-7[15] by failing to properly restrain "a vicious animal."[16] Because Andor was a police canine, specially trained to apprehend suspects, there was some evidence that "the animal had

---

[12] *Common Cause/Ga. v. City of Atlanta*, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005) (citation omitted).

[13] Id.

[14] *Roper*, supra at 114-115 (citations omitted).

[15] OCGA § 51-2-7 pertinently provides that a person who "keeps a vicious or dangerous animal. . .and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person injured."

[16] Key also alleged that Eshleman violated Walton County Code § § 10-3 through 10-5 by failing to properly restrain Andor. Key included purported photocopies of the cited authority in the record. But because the record does not contain original or properly certified copies of the county codes upon which Key relies, we cannot consider them. See *Thorsen v. Saber*, 288 Ga. 18, 19 (1) (701 SE2d 133) (2010).

a propensity to do the act which caused the injury and that the defendant knew of it."[17] Where the relevant facts pertaining to official immunity are in dispute, resolution of the factual issues is for the jury.[18]

"[Eshleman] bore the burden on summary judgment of demonstrating that [she] was entitled to official immunity by showing that the specific acts [she] performed were discretionary."[19] Inasmuch as she has not met that burden, the trial court did not err by denying her motion for summary judgment.

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[17] *Pearce v. Shanks*, 153 Ga. App. 693 (1) (266 SE2d 353) (1980) (citation omitted).

[18] *Glass v. Gates*, 311 Ga. App. 563, 575 (2) (716 SE2d 611) (2011).

[19] *Howell*, supra (citation omitted).